PeársoN, C. J.,
dissenting. It is a matter of- regret that the Judges of this Court have not been able to agree upon all of the questions to which the general conscription act, February 17th, 1864, has given rise. But the ground was untrodden.. There were no cases to guide ns, and perfect .concurrence of opinion was hardly to be expected. ' '
So far as .the opinion delivered' by my brother Battle is based on the doctrine of necessity, “ which knows no law,” and the principle that, in respect to individuals, the war, power of Congress is unlimited — those questions being settled by Walton vs. Gatlin, it is my duty to "conform to that decision. . ' . -
*120 That case did not present the question, whether the war power of Congress is also unlimited in respect' to the States ¿ which is'“the point” in this cáse.
Johnson vs. Mallett at the extra term settles the principle that in respect. to the States the war power of Congress is limited, and is subject to their reserved right in regard.to their officers ; and on that ground it*is decided that a State officer is not liable fo conscription. • , ' • ■
It is conceded that this right cannot be impaired by the action of Congress, .and the difference of opinion is as to the extent of the right. Is it confined to the keeping, in offices persons. who may be in ' office at a given time ? or does it extend' to the filling of, vacancies which from time to time may occur ? That is the question. ■
The ground on which this right is based is, that the existencé of' a State' depends on having such'officers as are necessary to administer its government and laws. Therefore it cannot be intended, that in creating the government of the Confederate States, it was the design of the States to confer a power, by which, their existence would be made to depend on the will of their creature.
This is a broad ground, and it embraves as well the right to' fill vacancies, as the right to keep in office, persons who may be in office at a given time ; for the former right is «equally as necessary to the continued existence of a State as the latter : and no State can have an independent existence without both. ' In fact, they are but parts of one and the same right. • This being so, it follows that neither part can be impaired.by the.action of Congress : .and it must be conceded- that the part in relation to filling vacancies is decidedly impaired, if it be restricted to the' election or appointment of men who are *121 ever conscript age", exempt as a “ matter of grace ” on the part of Congress.
B,otb being necessary and covered by the same principle, I can see no ground to draw a dividing line between the two parts, except to “'split the difference*” between the claim of the Confederate States and the reserved ^rights of the States, because of a “ present necessity ” on the idea of “ letting the future take care of itself.”
To meet, this difficulty. a'distinction is suggested between the offices named in the Constitution, and offices created by the Legislature." * This suggestion does not meet the difficulty. It was not to be expected that an instrument like the Constitution would enumerate all of the necessary State offices, and, \ therefore,,, it, confers on the Legislature power to create and fill all • offices which, in its wisdom, should be deemed necessary ; and there can be no substantial difference between offices named in the Constitution and offices created zmder its authority,■ both" classes of offices being necessary for the proper administration of the government and laws of a -State — in other words, to preserve its existence ; and the power conferred on Congress is subject to the rights of the State in regard to both classes. Indeed, it is decided by Johnson vs. Mallett, supra, that the part of the right in relation to keeping persons, in office, embraces offices-of the latter class as well as offices of the former, class ; so the. only question “ open ” is as to that part of the right-in relation to filling vacancies. This suggestion, so far from disproving that part of the right, yields a part of the question and makes it more difficult to maintain the other. To make the subject clear, take an illustration from the operations of war, that being the order of the day : The main work in front is carried by Johnson vs. Mallett; the work on *122 the right is yielded by this suggestion, whereby the work on the left becomes so exposed in front and flapk as to be no longer tenable.
Again it is suggested — “ The-two governments should act in harmony, and to do so,, the government which first exercises a power ought to be allowed to- retain all citizens who have.been taken into its service.” . No ®ne feels a deeper conviction than I do, .that in order to presérve harmony, each government should be allowed, the fullest exercise .of its rightful powers.. But the suggestion under consideration interferes with the exercise of a rightful power o,f the State, and assumes the powers of the two governments in regard to this subject to be concurrent. This is a departure from the principle settled in Johnson vs. Mallett, to-wit: That the war power of the Confederate States is subservient to the reserved right of the States in regard to their officers. In my opinion the proper way to preserve harmony and allow u each to move in its appropriate sphere,” is to «onsider Congress as having exercised its powers of conscription, subject to the preferred right of the States, so that when it .becomes neces-; sary for a State to exercise the preferred right, the prior action of Congress shall give way and allow the election of a State officer to fill a vacancy,- to have - the effect ipso facto of terminating the conscription of the person elected ; in the same way and on the same ground that one in the militia or home guard service of a State, as soon as he is conscripted, passes into the service • of the -Confederate States, because the war power of the State is secondary, and the Confederate States have the preferred right under their war power. (See my opinion, Wood vs. Bradshaw, at this term.) This principle may be illustrated by many analogies of the la-y. One will suffice : A sister takes as *123 heir of ber brother — afterwards another brother is born. At the common law the estate of the sister terminates, and gives place to the right of the brother, under the rule —“ males are preferred to females/’
The other point as to the meaning of the act, séction 10, clause 2, is of minor, importance. But l am so unfortunate as to differ in respect to that.also. I can-see nothing in this clause to confine its operation to persons who, at the date of the act, filled thé offices of Yiee President, members of Congress, members .of the Legislature and other Confederate and State offices, and -to exclude from its operation all persons who may afterwards be elected to these offiees, if they are at the time of their election in the military service of the Confederate States. The conscription, by the act, February, 1864, is general, and applies as well to persons then in service, to keep them in during the war, as to persons not then in service. The exemption must have as broad an application as the conscription, unless there he words of restriction. The only words used are, “shall'be exempted,” which mean* “shall be relieved ” .from the service imposed by the conscription. Such being the plain meaning of the words used, it must be taken that Congress so intended, and there is no room for construction.
If words at all ambiguous had been used, the rule of construction, that the Court, may derive aid from other statutes in pari materia, or from the preamble to a former statute, made for the special purpose of justifying an act, which, to many, seemed to be in violation qí a centraet, might have been applicable; and, on the other hand, it might have been relevant to have made the suggestions : that the exemption in regard to State officers was meant to extend to persons in the army, elected to fill vacancies, *124 in deference to the right "claimed by the States ; that it is unreasonable, to suppose it was intended to confine the -States, in filling all vacancies that might thereafter occur, to the election or appointment^ of men over conscript age ; and that in regard to members of Congress and other Confederate officers, it would be indecent to suppose that the members' in at the da’te of the hot, intended to exclude from competition with themselves, at future elections for Congress, all of their fellow-citizens, except men over the age of fifty years J
In my opinion there is no error in the judgment at chambers.